UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MONTEFIORE MEDICAL CENTER,

                                **Plaintiff,**                        **14-CV-10229 (RA)(SN)**

              -against-                                    **REPORT AND
                                                                                  RECOMMENDATION**

LOCAL 272 WELFARE FUND, et al.,

                               **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS:**

      Montefiore Medical Center ("Montefiore") sued Local 272 Welfare Fund (the "Fund") under the Employee Retirement Income Security Act ("ERISA") as the assignee of the Fund's insurance beneficiaries. Montefiore alleges that the Fund did not pay Montefiore's urgent care claims in full and on time and seeks monetary damages under ERISA § 502(a)(1)(B) and an injunction under § 502(a)(3). Under Federal Rule of Civil Procedure 12(b)(1), the Fund moves to dismiss the second cause of action because Montefiore lacks statutory standing to seek equitable relief. Alternatively, under Rule 12(b)(6), the Fund moves to dismiss the second claim on the ground that equitable relief is not available under ERISA because monetary damages would fully compensate Montefiore.

      Because the Fund beneficiaries did not assign Montefiore their rights to seek equitable relief, and Montefiore otherwise lacks standing to seek an injunction, I recommend that Montefiore's second cause of action be DISMISSED.

**BACKGROUND**

This Report presents only the relevant background. Except where noted, the facts are drawn from the Complaint.

Local 272 Welfare Fund pays healthcare benefits for members of Local 272, a union that represents parking garage workers, through a "Plan" that governs payments. Since 2007, the Fund has used a preferred provider organization, which negotiates discounts with healthcare providers. Fund beneficiaries who visit an "in-network" provider pay only a small copayment, and the Fund reimburses the provider for the balance. Montefiore is a hospital in the Bronx that has treated members of Local 272. Starting in 2007, Montefiore was an in-network provider for Fund beneficiaries. But the Fund did not pay Montefiore for its services, and, by the middle of 2008, the Fund owed the hospital more than one million dollars.

In August 2008, Montefiore terminated its contract with the Fund and became an out-of-network provider for Fund beneficiaries. As an out-of-network provider, Montefiore did not offer discounted rates or admit Fund beneficiaries in non-emergency situations. Nonetheless, as required by federal law, Montefiore continued giving Fund beneficiaries urgent care services at its market rate and billed them directly. The Fund was required to reimburse beneficiaries for pre-certified urgent care services, and Fund beneficiaries assigned their right to reimbursement to Montefiore in exchange for treatment. As relevant, the assignment reads:

> I hereby assign, transfer and set over to the above named Medical facility sufficient monies and/or benefits to which I may be entitled from governmental agencies, insurance carriers, or others who are financially liable for my hospitalization and medical care to cover the costs of the care and treatment rendered to myself or my dependent in said hospital.

ECF No. 19-1 at 2. The Complaint relied on the assignment to establish jurisdiction, but did not quote directly from it, and the defendants' Reply provided a sample assignment. By Court-ordered Surreply, Montefiore conceded that the sample assignment was accurate.

Montefiore claims that, since 2008, the Fund violated ERISA by failing to pay in full Montefiore's pre-certified urgent care claims. The Plan required the Fund to reimburse these claims at the "maximum amount the plan would have paid an in-network provider for the same service." ECF No. 1 at 9. But, according to Montefiore, the Fund refused to pay some claims at all, and when it did pay, it reimbursed Montefiore only 10 to 15 percent of the claims' value, well below the allowable rate for comparable services.

Montefiore also alleges violations of ERISA's notice and timeliness requirements. ERISA requires the Fund to issue a "Notice of Denial" when it denies a beneficiary's claim or fails to pay it in full, and the Notice must set forth the specific reasons for the adverse determination. According to Montefiore, the Fund failed to issue Notices of Denial to some of its beneficiaries, and to others, the Fund issued Notices that did not adequately explain the adverse determinations. ERISA also requires the Fund to determine and pay benefits within 30 days of submission of a claim or bill. Montefiore alleges that the Fund never paid on time, waiting months or years to resolve claims.

In its first cause of action, Montefiore seeks reimbursement of benefits that the Fund should have paid for pre-certified urgent care. In its second cause of action, Montefiore seeks an injunction prohibiting the Fund from: (1) refusing to pay Montefiore's future pre-certified claims; (2) refusing to pay future claims at the proper rate; (3) ignoring the relevant ERISA deadlines for adjudicating claims; and (4) failing to provide relevant information about its claim determinations.

The defendants move to dismiss Montefiore's second cause of action under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction on the ground that Montefiore lacks standing to obtain injunctive relief. Alternatively, the defendants request dismissal under Rule 12(b)(6) because Montefiore has an adequate damages remedy under ERISA § 502(a)(1)(B), precluding equitable relief under § 502(a)(3).

## DISCUSSION

**I.   Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint," J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004), but "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." Guadagno v. Wallack Ader Levithan Assocs., 932 F. Supp. 94, 95 (S.D.N.Y. 1996). The burden is on the plaintiff to satisfy the Court of the jurisdictional facts. Makarova, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). In reviewing a motion to dismiss under Rule 12(b)(1), the Court "may consider affidavits and other materials beyond the pleadings . . . ." Attica Cent. Sch., 386 F.3d at 110. See also Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1010-11 (2d Cir. 1986) ("Under Rule 12(b), . . . a motion that includes evidentiary material outside the pleadings, is properly converted to a Rule 56 motion only when it is made under Rule 12(b)(6).")

In reviewing this Rule 12(b)(1) motion, the Court may consider assignment language outside of the Complaint because Montefiore relies on the assignments to establish standing.

Attica Cent. Sch., 386 F.3d at 110. Quoting Connecticut v. Physicians Health Servs. Of Conn., Inc., Montefiore suggests that "standing is challenged on the basis of the pleadings" and the Court must "accept as true all material allegations of the complaint." ECF No. 17 at 3 n.1 (quoting 287 F.3d 110, 114 (2d Cir. 2002)). But Physicians Health Servs. gave the standard for reviewing a complaint when *no other evidence was presented*, and did not consider a scenario like this one, where the defendants submitted a document that the plaintiff relied upon to establish jurisdiction.

**II.     Montefiore Lacks Standing to Assert Its Claim for Injunctive Relief**

To establish standing, an ERISA claimant must identify a "statutory endorsement of the action." Kendall v. Emps. Ret. Plan of Avon Prods., 561 F.3d 112, 118 (2d Cir. 2009). As relevant here, ERISA § 502(a)(1)(B) gives "a participant or beneficiary" standing to sue "to recover benefits due . . . under the terms of [the] plan," and ERISA § 502(a)(3) gives "a participant, beneficiary, or fiduciary" standing to sue for an injunction or other equitable relief. 29 U.S.C. § 1132(a)(1), (3). These categories are exclusive: "ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action . . . ." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27 (1983). The Court of Appeals, however, has carved out a narrow exception to this general rule "to grant standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 329 (2d Cir. 2011) (internal quotation marks omitted).

Montefiore concedes that it is not a participant, beneficiary, or fiduciary of the Fund, but argues that it has standing to sue for an injunction as the assignee of Fund beneficiaries. It is true

that Montefiore's patients assigned their rights to "monies and/or benefits . . . to cover the costs of care and treatment," and those assignments gave Montefiore a right to sue for damages under § 502(a)(1)(B). See Montefiore Med. Ctr., 642 F.3d at 329. But the assignment language stopped there; the beneficiaries did not assign their rights to seek equitable relief.

Determining which rights an assignor granted to an assignee is a question of contract law. Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 151-52 (2d Cir. 1995). When a contract is unambiguous, a court must look to the terms of the contract itself to resolve any legal dispute. O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc., 37 F.3d 55, 58-59 (2d Cir. 1994). In interpreting contracts, courts refrain from inferring terms that are not expressly included in the agreement. See Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 560 (2014).

"By expressly assigning only their right to payment," Montefiore's patients "did not also assign any other claims they might have under ERISA." Rojas v. Cigna Health & Life Ins. Co., 793 F.3d 253, 258 (2d Cir. 2015). See also Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011) (similar). Here, the Fund's beneficiaries assigned their rights only to "monies and/or benefits . . . to cover the costs of care and treatment," which are recoverable in damages. Thus, the assignments did not include the right to seek injunctive or other equitable relief to enforce other rights under ERISA. See Rojas, 793 F.3d at 258; Biomed Pharm., Inc., 775 F. Supp. 2d at 736. See also Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1289 (9th Cir. 2014); Premier Health Ctr., P.C. v. UnitedHealth Grp., 292 F.R.D. 204, 218-19 (D.N.J. 2013).

The Court has found two out-of-Circuit cases, not cited by Montefiore, holding that an assignment of "benefits" included the right to sue for an injunction, but these cases are either not

persuasive or not applicable. In Metcalf v. Blue Cross Blue Shield of Mich., the court concluded that an assignment of "benefits" made a healthcare provider into an ERISA "beneficiary," who had a statutory right to sue under § 502(a)(3). 57 F. Supp. 3d 1281, 1286 (D. Or. 2014). But ERISA offers a strict definition of "beneficiary": "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). And "a beneficiary is best understood as an individual who enjoys rights equal to the participant's to receive coverage from the healthcare plan." Rojas, 793 F.3d at 257. Montefiore did not gain the right to receive healthcare coverage when its patients assigned their rights to payment for Montefiore's services and, thus, it did not become a "beneficiary" entitled to sue under § 502(a)(3). Equally unavailing is Bloom v. Indep. Blue Cross, where the court held that an assignment of "rights and benefits" conveyed the full panoply of a patient's ERISA rights. No. CIV.A. 14-2582, 2015 WL 4598016, at *13 (E.D. Pa. July 31, 2015). Bloom relied on the assignment of "rights" under ERISA, and Montefiore's patients did not assign their "rights."

Even assuming, counterfactually, that Montefiore had standing to sue under § 502(a)(3), it could not enjoin the Fund from denying all of Montefiore's future claims. Montefiore's grievance with the Fund "is uniquely its own; it is not derivative of [Montefiore's] patients." Rojas, 793 F.3d at 259. But as the assignee of its patients, Montefiore stands in their shoes, and any injunction would enforce only their rights, not Montefiore's. Moreover, Montefiore cannot enforce the rights of a hypothetical future patient until the patient has actually received care and assigned her rights.

### III. The Court Need Not Consider the Fund's Rule 12(b)(6) Argument

Because Montefiore does not have standing to sue for an injunction, the Court need not consider the Fund's alternative argument that monetary damages preclude injunctive relief under

7

ERISA. The Court observes that Montefiore essentially concedes that it seeks only a monetary remedy—and that it seeks an injunction only to relieve the cost and inconvenience of litigating any future claims. See ECF No. 17 at 4. But the Court of Appeals has instructed that a district court must evaluate a claimant's ERISA claims under both § 502(a)(1)(B) and § 502(a)(3) *before* deciding whether monetary damages fully compensate the claimant's injury. N.Y. State Psychiatric Assoc., Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015). Thus, if the Court were to consider the Fund's alternative argument, it would have to reject it as premature at the motion to dismiss stage.

## CONCLUSION

Because Montefiore lacks standing to sue for an injunction under ERISA § 502(a)(3), I recommend DISMISSING the second cause of action for lack of jurisdiction. The Defendants are instructed to answer the Complaint's First Cause of Action by Monday, November 2, 2015. The parties are instructed to submit a joint letter, no later than Monday, November 16, 2015, updating the Court on the status of the related case, 09-cv-03096, and proposing a schedule for discovery in this one. Discovery should not be held in abeyance while Judge Abrams acts on this Report and Recommendation.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         October 19, 2015

\*   \*   \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).