UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 03/31/2017

Montefiore Medical Center,

      Plaintiff,

      v.

Local 272 Welfare Fund and Marc Goodman
*in his capacity as Fund Manager of Local 272
Welfare Fund,*

      Defendants.

No. 14-CV-10229 (RA)

OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

Plaintiff Montefiore Medical Center ("Montefiore") brought this action against Defendants Local 272 Welfare Fund and Marc Goodman, in his capacity as Fund Manager of Local 272 Welfare Fund (together the "Fund"), alleging that the Fund violated ERISA by reimbursing Montefiore for hospital services it provided to the Fund's members and their dependents at substantially lower rates than what the Summary Plan Description ("SPD" or the "Plan") requires. The parties cross-moved for summary judgment. The motions were referred to Magistrate Judge Netburn, and on December 2, 2016, she issued a Report and Recommendation (the "Report"), which recommends that Montefiore's Motion for Summary Judgment be granted and the Fund's Motion for Summary Judgment be denied. On December 16, 2016, the Fund filed objections to the Report, and on December 30, 2016, Montefiore filed its response. For the reasons that follow, the Court adopts the thorough and well-reasoned Report in its entirety.

## LEGAL STANDARDS

### I. Standard of Review of a Magistrate Judge's Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil Procedure 72(b), a party may make "specific written objections to the proposed findings and recommendations" within fourteen days of being served with a copy of a magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b). A district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." *Brown v. Colvin*, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). "To accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Hunter v. Lee*, No. 13-CV-5880, 2016 WL 5942311, at *1 (S.D.N.Y. Oct. 11, 2016) (quoting *King v. Greiner*, No. 02-CV-5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).

### II. Summary Judgment

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "The movant bears the burden of demonstrating the absence of a question of material fact." *Chaparro v. Kowalchyn*, No. 15-CV-1996, 2017 WL 666113, at *3 (S.D.N.Y. Feb. 17, 2017). "When a motion for summary judgment is properly

2

supported by documents or other evidentiary materials, the party opposing summary judgment

may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits

or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a

genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ.

P. 56(e)).  In determining whether to grant summary judgment, the Court must "constru[e] the

evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences

in its favor." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting *Costello v.

City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011)); *see also Celotex Corp. v. Catrett,* 477 U.S.

317, 323 (1986).  "Where, as here, there are cross-motions for summary judgment, 'each party's

motion must be examined on its own merits, and in each case all reasonable inferences must be

drawn against the party whose motion is under consideration.'" *Lumbermens Mut. Cas. Co. v.

RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel

Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001)).

## DISCUSSION

The Court assumes familiarity with the facts outlined in the Report. The Fund makes three

objections.  First, the Fund contends that Montefiore does not have standing to challenge the

Fund's interpretation of the Plan.  Second, it argues that Judge Netburn applied the incorrect

standard of review. Third, the Fund objects to the Report's interpretation of the Plan's provision

regarding out-of-network providers. *See* Defs' Obj. at 1.  For the reasons that follow, each of these

objections is unpersuasive and the Report is adopted in its entirety.  The Court holds that

Montefiore does have standing, that the *de novo* standard of review is the appropriate one, and that

Judge Netburn was correct in concluding that pursuant to the SPD, in calculating payment owed

to out-of-network providers, "the Fund needs to determine what it pays its various in-network

providers for a particular service, and then select the 'maximum,' or highest, amount." Report at 13.

## I. Standing

As an initial matter, the Fund argues that Montefiore does not have standing as the assignee of the Fund's participants to "object to [the] plan's interpretation rather than its plan provisions." Defs' Obj. at 13. The Court disagrees.[1]

The Second Circuit has held that "a narrow exception to the ERISA standing requirements . . . . grants standing . . . to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *see also I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("[U]nder federal common law, the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA."). Nonetheless, Defendants contend that Montefiore does not have standing in this case because it is challenging "the Fund's interpretation of its SPD." Defs' Obj. at 13. In so doing, however, they cite no case law for the proposition that a healthcare provider cannot stand in the shoes of beneficiaries when advancing arguments regarding a plan's interpretation. Indeed, in *I.V. Services of America, Inc.*, the Second Circuit held that a healthcare provider, "standing in [the beneficiary's] shoes" could raise arguments regarding the interpretation of a plan. 136 F.3d at 121–22 ("Mr. Whitehurst (or I.V. Services [the provider] standing in his shoes) should be able to claim that any contract ambiguities

---

[1] Although this argument was not made explicitly to Judge Netburn, the Court will address "the issue because standing issues potentially implicate this court's jurisdiction, any question as to which we are obliged to resolve regardless of the parties' arguments." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002).

are to be interpreted against appellees who wrote the contract."). The Court is thus satisfied that Montefiore has standing to raise the issues and arguments presented here.

## II. Standard of Review

The Fund next argues that Judge Netburn erred by applying the *de novo* standard of review to the Fund's interpretation of the SPD. Defs' Obj. at 6–11. As the Report rightly recognized, the SPD contains an express grant of discretionary authority to the Board of Trustees, which would ordinarily mean that a court could reverse the administrator's decision only if the decision is arbitrary and capricious. Report at 8; *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 650 (2d Cir. 2002). Nonetheless, the Report concluded that *de novo* review should be applied in this case pursuant to the Second Circuit's decision in *Halo v. Yale Health Plan,* 819 F.3d 42, 45 (2d Cir. 2016) because the Fund did not comply with the Department of Labor's ("DOL's") claims-procedure regulation, 29 C.F.R. § 2560.503-1.

Defendants object, suggesting that *de novo* review is only appropriate in more limited circumstances not present here. Defs' Obj. at 9–11. In particular, they argue that "the Fund followed its claim review procedure in every way that is relevant to providing a full and fair review of the claims and Montefiore obtained, through the administrative review procedure, a decision on the merits of its claims. Therefore Montefiore suffered no harm." Defs' Obj. at 9. Among other things, Defendants ask the Court to read *Halo* to apply only when a plan's non-compliance with the DOL regulation has a connection to the "substantive decision reached." Defs' Obj. at 11.

Such a rule is incompatible with *Halo*. In *Halo*, the beneficiary of an ERISA plan challenged the denial of her claims for health benefits, arguing that *de novo* review should apply because the plan's denials did not contain the specific information required by the DOL's claims-

5

procedure regulation and were untimely. The district court took a position similar to that which Defendants urge here, and held that because the plan had substantially complied with the ERISA regulations, arbitrary and capacious review was still appropriate. *Halo v. Yale Health Plan*, 49 F. Supp. 3d 240, 257 & n.15 (D. Conn. 2014). The Second Circuit reversed, "reject[ing] the substantial compliance doctrine because it is inconsistent with the Department's regulation," and holding that a plan must "strictly adhere to the regulation to obtain the more deferential arbitrary and capricious standard of review." *Halo*, 819 F.3d at 56–57; *see Salisbury v. Prudential Ins. Co. of Am.*, No. 15-CV-9799, 2017 WL 780817, at *3 (S.D.N.Y. Feb. 28, 2017) ("In short, *Halo* held that if the plan administrator does not strictly comply with the Department of Labor's regulation governing the processing of an employee's claim, then *de novo* review applies to the denial of benefits, regardless of whether the plan vests discretion with the administrator.").

*Halo* recognized a limited exception to this rule, however. Failure to comply with the DOL regulation may not "result in that claim being reviewed *de novo* in federal court," if a "plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo*, 819 F.3d at 58 (emphasis in original). These are issues on which the plan bears the burden of proof and "such deviations should not be tolerated lightly." *Id.* at 57–58.

Defendants argue that notwithstanding their non-compliance with the DOL regulation, deferential review is still appropriate under the limited exception recognized in *Halo.* Although Defendants conceded below that "Montefiore's patients would under *Halo* in a federal lawsuit be entitled to the benefit of *de novo* review . . ." Report at 9 (quoting Defs' Mem., Dkt. No. 51, at

6

15),[2] they nonetheless fault the Report for not making "findings or draw[ing] any conclusions as to whether any of the errors found by the court in the processing of Montefiore's claims were inadvertent and harmless." Defs' Obj. at 11.

The evidence in the record is sufficient to show as a matter of law that the Fund failed to meet the requirements of the limited exception recognized by the *Halo* court because it did not "otherwise establish[] procedures in full conformity with the regulation." *Halo*, 819 F.3d at 58. As Judge Netburn found, there were numerous and recurring systemic failures to comply with the DOL regulation. Report at 9–11. For example, "the Fund's cited explanation, 'Claim Paid as Out-of-Network Provider Under Plan,'" used on almost all adverse determinations, does not provide a "specific reason or reasons for the adverse determination," nor does it "[r]eference to the specific plan provisions on which the determination is based," in violation of 29 C.F.R. §§ 2560.503-1(g)(1) (i), (ii). *See* Report at 10–11; *see* Martin Decl., Dkt. No. 61, Exs. B-2, B-3, B-4, B-5, B-6, B-7, B-8, B-9, B-10, B-13, B-14, B-15, B-16, B-17, B-18, B-19, B-20, B-22, B-23, B-24, B-25, B-26, B-27, B-28. Other explanations used by the Fund, including "Code No Longer Used in Plan," *see id.* Ex. B-26, and code number "375," *see id.* Exs. B-13, B-14, B-22, B-23, B-24, also do not meet the DOL regulation's requirements. *See* 29 C.F.R. §§ 2560.503-1(g)(1) (i), (ii). The Fund's systematic noncompliance is not a "minor deviation[]" from procedures that are otherwise "in full conformity with the regulation," and is unlike the examples of "inadvertent and harmless deviations" provided by the Second Circuit, such as a plan responding one hour or one day late.

---

[2] The Fund made this statement in arguing to Judge Netburn that "[w]hile Montefiore's patients would under *Halo* in a federal lawsuit be entitled to the benefit of *de novo* review, that right goes beyond the right to payment and was not assigned to Montefiore, so Montefiore cannot be heard to assert that . . . the Court should give no deference to the Fund's interpretation of the provisions regarding reimbursement for out of-network services." Defs' Mem., Dkt. No. 51, at 15.

*Halo*, 819 F.3d at 57.  Defendants' objection to the application of the *de novo* standard of review

is thus denied.

### III. Interpretation of the Plan

Lastly, Defendants object to Judge Netburn's interpretation of the SPD.  The text at the

center of this dispute is as follows:

> Out-of-network services are services provided by a licensed
> provider outside of the Plan's network.  When you select out-of-
> network services that are covered by the Plan:
> - You will usually have to pay the provider when you receive
>   service;
> - You will need to file a claim form to be reimbursed by the Fund;
> - In addition to your normal copay or coinsurance, you must also
>   pay any difference between the amount that an out-of-network
>   provider charges and <u>the maximum amount the Plan would have
>   paid an in-network provider for the same service.</u>

Goodman Decl., Dkt. No. 49-1, Ex. A, at D 0044 (emphasis added) (hereinafter "out-of-network

provision").  Judge Netburn interpreted this provision to be

> unambiguous as a matter of law. It sets the reimbursement rate at
> precisely "the maximum" that the Fund pays "an in-network
> provider for the same service."  This means that the Fund needs to
> determine what it pays its various in-network providers for a
> particular service, and then select the "maximum," or highest,
> amount. Modifying these plain words—to allow, for example, that
> the "maximum" is limited to the rate for an in-network provider *in
> the same geographic region*, or to an in-network provider *of the
> similar caliber*—would require the Court to ignore the plain text and
> rewrite the Plan.

Report at 13 (emphasis in original).  This Court agrees.

"We apply familiar rules of contract interpretation in reading an ERISA plan." *Lifson v.*

*INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003). "ERISA plans are construed according

to federal common law.  This Court will review the Plan as a whole, giving terms their plain

meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (citation omitted). "We

interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (quoting *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1452 n.1 (5th Cir. 1995)). The interpretation should not "render some provisions of the plan superfluous." *Frommert v. Conkright*, 738 F.3d 522, 529–30 (2d Cir. 2013) (quoting *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995) (explaining that such an interpretation by the trustees of a plan "may well be found to be arbitrary and capricious." (quoting *O'Shea*, 55 F.3d at 112)); *cf. JA Apparel Corp. v. Abboud*, 568 F.3d 390, 405 (2d Cir. 2009) (holding that New York courts interpreting contracts "apply the rule that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect,. . . i.e., the rule against surplusage." (quotation marks omitted)).

Defendants urge that "the maximum amount the Plan would have paid an in-network provider for the same service" should be interpreted to mean that "the Fund will pay out the maximum amount it determines for a service, rather than electing to pay some lower amount" but "in no way details how the maximum will be calculated." Defs' Obj. at 15. They further argue that "[t]his provision provides certainty to participants" that if the Fund determined that the maximum it would pay for a certain procedure at Hospital A is $45,000, "that the Fund will not decide ad hoc to pay $25,000 because of a dispute with Hospital A." Defs' Obj. at 16. In this case, the Fund at first paid Montefiore "using the rates paid at St. Barnabas Hospital." Defs' Obj. at 9. After Montefiore appealed, the Fund then "utilized the rates it paid to Jacobi Medical Center to reimburse Montefiore for services provided." Goodman Dcl., Dkt. No. 49, Ex. E, at 3. It explained that "[t]he Fund determines the appropriate in-network provider rates to use when paying an out of network provider by examining a number of factors, including the locality of the

9

providers and whether the providers provide the same or similar types of services." *Id.* Thus, the Fund has interpreted "the maximum amount the Plan would have paid an in-network provider for the same service" to "refer to the rate paid by the Fund to a hospital in the geographic vicinity of the out-of-network hospital that provided the same services as the out-of-network hospital." Goodman Decl., Dkt. No. 49, at ¶ 21.

The fundamental flaw with Defendants' interpretation is that it does not account for the use of the word "maximum" and is inconsistent with the rule against surplusage. *See Frommert*, 738 F.3d at 529–30. If the word "maximum" was deleted and the provision read "you must also pay any difference between the amount that an out-of-network provider charges and the . . . amount the Plan would have paid an in-network provider for the same service," it could more easily be argued that it has the meaning Defendants advance. But Defendants here chose to use the word "maximum."

"Maximum" is defined as "[t]he greatest possible quantity or degree." *The American Heritage College Dictionary* (3rd ed. 2000); *see also IX Oxford English Dictionary* (2d ed. 1989) ("The highest attainable magnitude or quantity (of something); a superior limit of magnitude or quantity."); *Webster's Third New International Dictionary* (1993) ("[T]he greatest in quantity or value attainable in a given case."). It is a relative term, suggesting the most of several alternatives. In the out-of-network provision, "maximum" is an adjective that modifies the noun "amount," so it connotes a comparison between different amounts. The context in which "maximum" is used tells us what kinds of amounts are to be compared, that is, the amounts that are paid to in-network providers. Neither the text of the out-of-network provision, nor its context, provide any additional modifiers that would imply a limitation on which in-network providers will be considered for determining the "maximum amount," such as geographic proximity or caliber of provider.

10

Because "maximum" carries with it this ordinary meaning, Defendants' argument that the "Fund's interpretation is simply that this provision does not in any way define how the maximum out-of-network amount is calculated," Defs' Obj. at 17, is unavailing. The most natural reading of the out-of-network provision is the interpretation explained in the Report: the provision conveys to a person of average intelligence and experience that the maximum amount will be determined by comparing the amounts paid for the same service to in-network providers and selecting the greatest number.[3]

Defendants criticize the Report for "mistakenly replac[ing] the SPD's terminology, 'an,'" with the court's word, 'any,'" *id.*, in holding that "the Fund cannot interpret the term maximum to mean anything less than just that: the maximum that it pays to any in-network provider," Report at 13 (emphasis added). But as many courts have held, both "an" and "a" are indefinite articles, and thus their meaning "depends on context." *United States v. Gundy*, No. 13-CR-8, 2013 WL 4838845, at *3 (S.D.N.Y. Sept. 11, 2013); *see also Renz v. Grey Advert., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997) ("[T]he use of the indefinite article 'a' implies that the modified noun is but one of several of that kind."). Consider the examples offered by Judge Oetken in interpreting the meaning of "a":

> "You must apply for kindergarten before completing a year of preschool." It is fairly obvious from the context of the sentence that *"a* year of preschool" is intended to mean *"a single* year of preschool." But consider the following directive from a doctor: "You must take one of these pills before finishing a meal" (or "Take one pill with a meal"). This is probably better read as meaning "before finishing *any* meal" (or "with *any* meal"). And consider the sentence: "You must stay out of the swimming pool until 15 minutes after eating a candy bar." Given the context, the better reading of

---

[3] Defendants' argument that the Fund had no reason to clarify the SPD's terms prior to this dispute, Defs' Obj. at 18, is unpersuasive. The Court's job, of course, is to interpret the text as written, not as the text might have been.

> this sentence is that it refers to *any* candy bar—and that if someone
> ate three candy bars consecutively, the 15–minute moratorium
> would be triggered by the eating of the *third* candy bar.

*Id.* at *2. As these examples show, in context "an" can mean "any," and the Court finds that is the most natural reading of "an" in the out-of-network provision.

The Court thus agrees with Judge Netburn that the out-of-network provision unambiguously requires the Fund "to determine what it pays its various in-network providers for a particular service, and then select the 'maximum,' or highest, amount." Report at 13.[4]

The Fund's argument that policy considerations should outweigh the plain meaning of the text is also unavailing. Specifically, the Fund argues that (1) the determination of the maximum amount for a particular service is complex and burdensome for its network provider MagnaCare Administrative Services LLC and / or that MagnaCare may not share the necessary information with the Fund; (2) the Report's interpretation of the out-of-network provision will result in financial consequences which cannot have been intended by the Fund; (3) "in-network hospitals with lower negotiated reimbursement rate [will] flee the network"; (4) the interpretation reduces the incentive for members to use in-network providers; and (5) it will produce financial hardship for the Fund and possibly lead to its insolvency. Defs' Obj. at 21–22.

---

[4] The Fund also argues that the out-of-network provision is ambiguous. Defs' Obj. at 17–18. The Court disagrees. The text of the out-of-network provision is not "reasonably susceptible to more than one interpretation." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999); *see Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation."). In any event, to the extent the language of the out-of-network provision is ambiguous, on *de novo* review any ambiguity is construed against the Fund, pursuant to the doctrine of *contra proferentem*, as Defendants have not suggested that there is relevant extrinsic evidence about the meaning of the SPD. *See Stern v. Cigna Grp. Ins.*, No. 07-0772-CV, 2008 WL 4950067, at *1 (2d Cir. Nov. 20, 2008) (summary order); *I.V. Servs. of Am., Inc.*, 136 F.3d at 121; *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991). *Contra proferentem* is "[t]he doctrine that, in the interpretation of documents, ambiguities are to be construed unfavorably to the drafter." *Black's Law Dictionary* (10th ed. 2014).

Even assuming arguendo that Defendants are right about some of the consequences that may flow from the SPD's out-of-network provision, they simply do not override the Court's obligation to interpret the text of this "ERISA plan[] in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow*, 378 F.3d at 256 (quotation marks omitted). "A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) (internal citation omitted); *see Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009).

## CONCLUSION

Plaintiff's Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is denied. This case is remanded to the Fund so that it can reconsider Montefiore's claims, consistent with this Opinion and the Report and Recommendation, which is adopted in full, within the time constrains set forth in the Plan.[5]

The Clerk of Court is respectfully directed to close the motions pending at docket numbers 43 and 48.

SO ORDERED.

Dated:    March 31, 2017
          New York, New York

Ronnie Abrams
United States District Judge

---

[5] As recommended by Judge Netburn, in light of the ambiguity regarding whether Montefiore exhausted administrative remedies with respect to claim B-11, the parties are directed to meet-and-confer to determine whether claim B-11 should be remanded along with all the other claims.

13